IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MONTRIL CARLEONE MOORE                                         PLAINTIFF

v.                         No. 4:25-cv-752-DPM

NEIGHBORHOOD ASSISTANCE
CORPORATION OF AMERICA                                        DEFENDANT

ORDER

Pursuing his goal of moving from El Paso to Little Rock, and shifting from being a Section 8 voucher tenant to a homeowner, Montril Moore joined the Neighborhood Assistance Corporation of America. That non-profit helps low-income folks buy homes. Moore paid an annual $25 membership fee, plus reimbursed NACA for the cost of credit reports. Some progress towards Moore's goal was made. But the parties' relationship eventually fell apart. Moore has sued, alleging disability-related discrimination and making various federal and state statutory claims. NACA moves to arbitrate the dispute and stay this case. Moore resists these steps. The parties agree, however, on the threshold issue: Is the arbitration provision embedded in NACA's membership agreement with Moore enforceable under Arkansas Law? *Express Scripts, Inc. v. Aegon Direct Marketing Services, Inc*, 516 F.3d 695, 699–700 (8th Cir. 2008); 9 U.S.C. § 2. No *Prima Paint/Buckeye* issue is presented at this point because, while Moore's fallback position is that

the whole membership agreement can't stand, he first and specifically challenges the arbitration provision. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 402–04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46, 449 (2006).

Paragraph G of the membership agreement is entitled "**Express Waivers of Liability Against NACA & Requirement of Arbitration of Any and All Claims**[.]" *Doc. 9-1 at 16*. It has two sub-paragraphs. The first is a blanket waiver, which is not implicated in the threshold arbitration dispute. The second paragraph is the challenged arbitration provision.

> In addition to the foregoing, the Member agrees that, should there ever arise a controversy or claim with NACA, its affiliates, participating lenders, directors, officers, staff, agents or independent contractors resulting from, or otherwise relating in any way to, the NACA Program, including, but not limited to, the purchase, financing, refinancing, renovation of the Member's home, HomeSave solution, or participation in or exclusion from NACA, NACA Programs or other NACA benefits and services, including, without limitation, whether any such claim or dispute is subject to arbitration, the Member shall afford NACA a reasonable time to resolve the dispute to the Member's satisfaction. In the event that no such resolution occurs, **the Member knowingly, willingly, and after having time to consult with legal counsel, waives the right to trial by jury and agrees to submit any and all such controversies, dispute, suits, demands, or claims of damage of any kind for resolution to the American Arbitration Association or other arbitration service agreed**

**to by the parties, to be resolved in accordance with its rules and procedures.** Any arbitration hereunder shall be held in Boston, Massachusetts, or at such other convenient venue or forum (such as where the Member resides), as NACA may designate following receipt of a written demand for arbitration. If this venue provision is ever rendered unenforceable for any reason, it shall not affect the parties' unconditional agreement and obligation to submit the controversy or claim to arbitration in a lawful venue. The judgment in the arbitration proceeding shall be final and binding on the parties, and the judgment on such award rendered by the Arbitrator may be entered in any court having competent jurisdiction. Each party required to participate shall be personally responsible for his/her costs of arbitration (and his/her share of the costs required by the arbitration tribunal).

*Doc. 9-1 at 17.* Moore presses that this provision is one-sided, lacking in mutual obligations. NACA counters that, if informal resolution of any dispute fails, then everyone is bound to arbitrate it— mutuality exists.

"Arkansas strongly favors arbitration as a matter of public policy." *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at 2, 598 S.W.3d 1, 4. The Court must resolve doubts and ambiguities in favor of arbitration. 2020 Ark. at 3, 598 S.W.3d at 4. That said, for decades Arkansas courts have scrutinized arbitration provisions for mutual obligations, at times requiring identical or at least symmetrical obligations. *E.g., Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 121, 27 S.W.3d 361, 366–67 (2000); *The Money Place, LLC v. Barnes*, 349 Ark.

411, 415–18, 78 S.W.3d 714, 717–19 (2002). Moore relies on similar cases here.  This strong mutuality requirement has been criticized. *Plummer v. McSweeney*, 941 F.3d 341, 347 n.1 (8th Cir. 2019). It raises federal preemption issues because the doctrine does not apply to all contracts, just arbitration agreements. Compare the Federal Arbitration Act's contrary requirement.  9 U.S.C. § 2.  The parties have not ventilated those preemption issues.

*Jorja Trading* is the Arkansas Supreme Court's latest word, which this Court must follow. The preemption issues were noted but avoided in that case because the Supreme Court (dividing 4–3) relaxed the mutuality requirement.  It held that identical obligations were unnecessary, and some party-specific judicial remedies were fine, because both sides were bound by a foundational obligation to arbitrate any disputes that couldn't be resolved in small claims court. *Jorja Trading*, 2020 Ark. at 5–9, 598 S.W.3d at 6–7. Recent precedent from the Arkansas Court of Appeals applies both strong mutuality and weak mutuality. *Compare EBF Partners, LLC v. Letha's Pies, LLC*, 2021 Ark. App. 187, at 5–10, 625 S.W.3d 713, 717–20, *with Eldercare of Arkansas, IV, Inc. v. Gore*, 2024 Ark. App. 542, at 5–8, 703 S.W.3d 158, 161–63. The decisions from other courts about NACA's arbitration provision are not helpful. None applied Arkansas law.

Back to the Moore/NACA dispute.  As Moore points out, both parties did not explicitly agree to arbitrate any dispute that couldn't be

resolved informally. He did. "Member agrees", their provision says, not Member and NACA agree. *Doc. 9-1 at 17.* "The Member"—not NACA and the Member—"knowingly, willingly, and after having time to consult with legal counsel," was who "waives the right to trial by jury and agrees to submit any and all such controversies, dispute[s], suits, demands, or claims of damage of any kind. . ." to arbitration. *Ibid.* Consider the counterfactual. If informal resolution failed, and NACA had sued Moore for violating the membership agreement, could he compel arbitration of the dispute?

All this makes this case seem like *Jackson v. Hino Motors Manufacturing USA, Inc.*, in which my Brother Holmes denied the motion to enforce a one-sided arbitration agreement. 2008 WL 4425300. But there's a bit more here. Deep in the NACA/Moore provision is a venue term, favoring Boston (NACA's headquarters) or any other convenient venue or forum NACA selects, for example "where the Member resides." *Doc. 9-1 at 17.* (Put to one side Moore's point that this term also favors NACA because it gets to pick the place. That's true but not material on mutuality.) The parties' term continues. "If this venue provision is ever rendered unenforceable for any reason, it shall not affect the parties' unconditional agreement and obligation to submit the controversy or claim to arbitration in a lawful venue." *Ibid.* One reasonable way to read this sentence is that it only applies to whatever controversies or claims Moore might assert—the parties have

a mutual agreement to arbitrate those claims. Another reasonable reading is the one NACA advances: absent informal resolution, NACA and Moore agreed to arbitrate all their disputes. The parties' arbitration provision has one more breadcrumb, the title. This provision was a "**<u>Requirement of Arbitration of Any and All Claims</u>**[.]" *Doc. 9-1 at 16.*

The Court must discern what the parties intended in this part of the membership agreement. The issue is close. The Court must, though, resolve doubts and ambiguities in favor of arbitration. *Jorja Trading*, 2020 Ark. at 3, 598 S.W.3d at 4. The Court concludes that the parties intended a comprehensive, and symmetrical, fallback arbitration obligation. They expressed their intention imprecisely. Arkansas's unique mutuality law exposes the imprecision. Construed as the parties' unconditional agreement to submit any unresolved claim—either by NACA or Moore—to arbitration, the provision satisfies that law. It therefore stands.

NACA's motion, *Doc. 9*, is granted. The Court refers all of Moore's claims to arbitration. The case is stayed and administratively terminated. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Joint status report due 6 August 2026 and every six months thereafter until arbitration is resolved. The Court retains jurisdiction over the case during the pendency of the arbitration.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

2 February 2026